IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GARY LEE ELRITE,

        Petitioner,               2:  10 - cv - 303 - MCE TJB

    vs.

MICHAEL MARTEL, Warden, et al.,

        Respondents.        ORDER, FINDINGS AND

                                      RECOMMENDATIONS

_____/

## I.  INTRODUCTION

Petitioner, Gary Lee Elrite, is a state prisoner proceeding with a counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving a sentence of twenty-two years eight months for two counts of continuous sexual abuse of a child under the age of fourteen, two counts of lewd and lascivious acts against a child of fourteen or fifteen years, two counts of oral copulation of a child under the age of sixteen, and one count of producing, distributing or exhibiting obscene matter.  The jury also found true special allegations that a delayed reporting provision extended the statutes of limitations for sex crimes against minors.  Petitioner presents several claims in his federal habeas petition; specifically:  (1) the government failed to plead that counts 2, 3 and 4 had been brought within the applicable statute of limitations

1

("Claim I"); (2) California Penal Code § 803(f) was not available to revive the expired statute of limitations for counts 1, 5 and 6 ("Claim II"); California Penal Code § 803(f) was unconstitutionally applied to allow Petitioner's prosecution based on a successive report ("Claim III"); and (4) trial counsel was ineffective in not presenting evidence concerning the purchase date of a video camera and failing to make an argument with respect to the sequencing of the video ("Claim IV").  For the following reasons, Petitioner's habeas petition should be denied.

## II. FACTUAL BACKGROUND[1]

Defendant and W.A. married in 1993 and moved into a home in Redding, together with W.A.'s three sons, her nine-year-old daughter, D., [FN 2] and defendant's father.  W.A.'s 12-year-old daughter, L., moved into the home shortly thereafter.  [FN 3]  Within months, defendant began sexually abusing his stepdaughter, L., touching her and engaging in oral sex and sexual intercourse with her on a regular basis.  The first incident involving L., occurred just after she turned 13.  One night, as L. and D. lay on the floor of the bedroom they shared, defendant came into the room and began fondling L.'s breasts and vagina.  He then had sexual intercourse with her while D. slept on the floor nearby.  When defendant was finished, he instructed L. to douche to avoid getting pregnant.  He warned her not to tell anyone and threatened to "take her family away."  L. was afraid and did not tell anyone what had happened.
[FN 2]  D. was born in September 1983.
[FN 3]  L. was born in December 1980.

The second incident involving L. occurred one night when, after everyone else had gone to sleep, defendant entered L.'s bedroom, woke her up, took her into the hallway, stood her up against a closet door and inserted a dildo into her vagina.

Defendant sexually abused L. regularly, touching her and having oral sex and sexual intercourse with her at least 50 times before she turned 14.  The abuse continued "almost nightly" until L. turned 16.  As a result of defendant's sexual abuse, L. became pregnant when she was 16.  L. began using alcohol and marijuana, some of which she obtained from defendant.  She terminated the pregnancy, but because she was under the influence of drugs at the time, she could not recall at trial whether she had done so by throwing herself down a ravine or having an abortion.

---

[1]  The factual background is taken from the California Court of Appeal, Third Appellate District opinion dated September 10, 2008 which was attached to Respondent's answer as Exhibit A.

Within the first year of moving into the Redding house, defendant was also sexually abusing D. on a regular basis.  [FN 4]  The abuse escalated, beginning with an incident that occurred when defendant, while driving D. to a friend's house, parked his van on some railroad tracks just miles from their home and had sexual intercourse with D. in the back of the van.  Defendant began regularly engaging in sexual intercourse with D.  D. did not tell anyone about the abuse because defendant told her not to tell and because she was humiliated and feared her mother would get divorced again if she found out.

[FN 4]  One night, L. went to the bathroom and saw defendant engaging in oral sex with D., then just 11 years old.  On at least one occasion, defendant sexually abused both L. and D. at the same time.

In late 1996, after L. turned 16, she told her mother that both she and D. were being abused by defendant.  L. and D. immediately moved out of the house in Redding and lived with their grandparents and with friends.  Thereafter, in 1997, L. and D. both reported the abuse to Detectives Carol Birch and Steve Birch.  [FN 5]  W.A. eventually moved out and divorced defendant.

[FN 5]  The record contains no details regarding the 1997 report to law enforcement other than that a report was made.

Defendant continued to visit L. and D. after they moved out of the Redding house.  Both girls were regularly drinking alcohol and using drugs which were often provided by defendant.  When defendant learned the abuse had been reported, he made repeated attempts to keep D. from talking to law enforcement, telling her they were "soul mates" who were meant to be together and warning her that he would go to prison for a long time unless she changed her story.  D. recanted "for the drugs" and because she believed defendant.  L. eventually recanted as well.  As instructed by defendant, both L. and D. told detectives they caught defendant having an affair and threatened that if he did not tell their mother, they would tell her "he was doing stuff to [them]."

Defendant continued to have sex with D., who was then 14 or 15 years old.  D. moved back into the Redding house with defendant, where he continued his sexual relationship with her and continued to provide her with drugs and alcohol.  D. testified that she continued to have sex with defendant "[f]or the drugs."

Defendant continued to engage in oral sex and sexual intercourse with D. until she turned 19, often videotaping their encounters, and using sex toys and showing D. pornography.  As a result of the sexual abuse, defendant impregnated D. when she was 13, and again when she was 17.  Both pregnancies were terminated.

On March 30, 2004, Shasta County Sheriff's Detective Pamela Depuy received a videotape depicting defendant and D. engaged in sexual intercourse at defendant's house.

3

On March 31, 2004, Depuy interviewed L. and showed her portions of the videotape.  L. reported the abuse by defendant and stated she believed D. was approximately 14 or 15 at the time the tape was made.  Depuy also interviewed D. and showed her the tape.  D. reported the abuse and confirmed that she was the person in the video with defendant.

Detectives executed a search warrant at defendant's home in Redding on June 8, 2004, and found videotapes (some depicting sex acts between defendant and D.), numerous sex toys, gels, lotions, condoms, sex aids, handcuffs, leather straps, and pornographic magazines and movies.

People v. Elrite, No. C055012, 2008 WL 4152673, at *1-2 (Cal. Ct. App. Sept. 10, 2008).

### III.  PROCEDURAL HISTORY

On October 18, 2004, defendant was charged by felony information with two counts of continuous sexual abuse of a child under the age of 14 (§ 288.5, subd. (a)), one as to L. for conduct occurring between December 4, 1993 and November 30 [1994] (count 1), and one as to D., for conduct occurring between September 1, 1994 and August 31, 1997 (count 2); two counts of lewd and lascivious acts against a child of 14 or 15 years (§ 288, subd. (c)(1)), one as to D. for conduct occurring between September 1, 1998 and August 31, 1999 (count 3) and one as to L. for conduct occurring between December 6, 1994 and November 30, 1996 (count 6); two counts of oral copulation of a child under the age of 16 (§ 288a, subd. (b)(2)), one as to D. for conduct occurring between September 1, 1997 and August 31, 1999 (count 4), and one as to L. for conduct occurring between December 6, 1994 and November 30, 1996 (count 5); and one count of producing, distributing, or exhibiting obscene matter (§ 311.2, subd. (a)), for conduct occurring between March 1, 2004, and March 31, 2004 (count 7).  The information also alleged defendant committed the offenses described in counts 1 and 2 against more than one victim (§ 667.61); defendant engaged in substantial sexual conduct in committing the offenses in counts 1 and 2 (§ 1203.066, subd. (a)(8); and as to count 2, defendant used obscene matter depicting sexual content (§§ 311, 311.3).

The information was amended on June 6, 2005 to include an additional charge of unlawful sexual intercourse (§ 261.5, subd. (c) - count 8) as to a third victim S.L., for conduct occurring between November 17, 1998 and November 17, 2000.

The information was amended a second time on October 3, 2006, striking count 8 and specially alleging that counts 1, 5 and 6 were subject to the statute of limitations as set forth in section 803(f) [FN 6] based on the report L. and D. made to law enforcement on

March 31, 2004.

[FN 6]  At the time the second amended information was filed in 2006, section 803(f) provided, in relevant part:  "(1) Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date of a report to a California law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 261, 286, 288, 288a, 288.5, 289, or Section 289.5, as enacted by Chapter 293 of the Statutes of 1991 relating to penetration by an unknown object.  [¶]  (2) This subdivision applies only if all of the following occur:  [¶] (A) The limitation period specified in Section 800, 801, or 801.1, whichever is later, has expired.  [¶] (B) The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation that is not mutual.  [¶] (C) There is independent evidence that corroborates the victim's allegations.  If the victim was 21 years of age or older at the time of the report, the independent evidence shall clearly and convincingly corroborate the victim's allegation."  (Stats.2005, ch. 479, § 3.)

On October 3, 2006, defendant filed a motion to dismiss counts 1 through 6 as time-barred, challenging the People's reliance on section 803(f) (referred to in defendant's motion as "§ 803(g)").  [FN 7]  The People opposed the motion, arguing, among other, things that counts 2, 3 and 4 were subject to the 10-year statute of limitations set forth in section 801.1, subdivision (b) [FN 8] (hereinafter section 801.1(b)).

[FN 7]  The provisions of section 803(f) were first codified in former section 803, subdivision (g), effective January 1, 1994.  (Stats.1993, ch. 390, § 1, p. 2226.)

[FN 8]  Section 801.1(b) provides:  "Notwithstanding any other limitation of time described in this chapter, if subdivision (a) does not apply, prosecution for a felony offense described in subdivision (c) of Section 290 shall be commenced within 10 years after commission of the offense."

At the October 16, 2006, hearing on the motion, the People filed a third amended information striking those portions of time within which the conduct was alleged to have occurred to comport with section 801.1(b).  Based on that amendment, defendant conceded that section 801.1 "did extend that statute of limitations for ten years . . . ." and withdrew his motion as to counts 2, 3 and 4. Defendant claimed, however, that counts 1, 5 and 6 were time-barred because the People failed to file a charging document within one year of L. and D.'s first report to law enforcement in 1997. The court rejected defendant's arguments and denied the motion. In doing so, the court noted the language of section 803(f) does not require that the triggering report be the first report made by the victim, only that it be "a report having been made when a person was over eighteen and where the statute of limitations had already

5

1   expired."  The court also expressed doubt that the Legislature, in
2   enacting section 803(f), ever intended for a defendant to benefit
    from having persuaded his minor victim to recant a report.

3   The jury found defendant guilty on all counts and found all of the
    special allegations true.
4

5   Elrite, 2008 WL 4152673, at *3-4.

6       On direct appeal, Petitioner raised Claims I-III that he raises in this federal habeas

7   petition.  While Petitioner's direct appeal was still pending before the California Court of

8   Appeal, Petitioner filed a companion state habeas petition.  Petitioner states that this state habeas

9   petition raised his ineffective assistance of counsel claim as stated in Claim IV of his federal

10  habeas petition.  (See Pet'r's Reply at p. 4-5.)  The California Court of Appeal rejected this state

11  habeas petition and denied it on August 14, 2008, before it decided Petitioner's direct appeal.

12  The California Court of Appeal affirmed the judgment on direct appeal on September 10, 2008.[2]

13      Thereafter, Petitioner filed a petition for review in the California Supreme Court which

14  included all four Claims that he raises in this federal habeas petition.  The California Supreme

15  Court denied the petition for review on November 19, 2008.  Petitioner filed this federal habeas

16  petition on February 4, 2010.

17              IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

18      An application for writ of habeas corpus by a person in custody under judgment of a state

19  court can only be granted for violations of the Constitution or laws of the United States.  See 28

20  U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v.

21  Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

22  Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism

23  and Effective Death Penalty Act of 1996 ("AEDPA") applies.  See Lindh v. Murphy, 521 U.S.

24  320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim

25

26      [2] The California Court of Appeal directed the trial court to amend the abstract of the
    judgment on an issue not relevant to these proceedings.

6

1    decided on the merits in the state court proceedings unless the state court's adjudication of the

2    claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

3    clearly established federal law, as determined by the Supreme Court of the United States; or (2)

4    resulted in a decision that was based on an unreasonable determination of the facts in light of the

5    evidence presented in state court.  See 28 U.S.C. 2254(d).  Where a state court provides no

6    reasoning to support its conclusion, a federal habeas court independently reviews the record to

7    determine whether the state court was objectively unreasonable in its application of clearly

8    established federal law.  See Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009); see also

9    Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000), overruled on other grounds, Lockyer v.

10   Andrande, 538 U.S. 63 (2003).

11       As a threshold matter, this Court must "first decide what constitutes 'clearly established

12   Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538 U.S. at 71

13   (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law' under § 2254(d)(1) is the

14   governing legal principle or principles set forth by the Supreme Court at the time the state court

15   renders its decision.'"  Id. (citations omitted).  Under the unreasonable application clause, a

16   federal habeas court making the unreasonable application inquiry should ask whether the state

17   court's application of clearly established federal law was "objectively unreasonable."  See

18   Williams v. Taylor, 529 U.S. 362, 409 (2000).  Thus, "a federal court may not issue the writ

19   simply because the court concludes in its independent judgment that the relevant state court

20   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

21   application must also be unreasonable."  Id. at 411.  Although only Supreme Court law is binding

22   on the states, Ninth Circuit precedent remains relevant persuasive authority in determining

23   whether a state court decision is an objectively unreasonable application of clearly established

24   federal law.  See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only the

25   Supreme Court's precedents are binding . . . and only those precedents need be reasonably

26   applied, we may look for guidance to circuit precedents.").

1    The first step in applying AEDPA's standards is to "identify the state court decision that

2    is appropriate for our review." See Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).

3    When more than one court adjudicated Petitioner's claims, a federal habeas court analyzes the

4    last reasoned decision. Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  The last

5    reasoned decision with respect to Claims I, II and III came from the California Court of Appeal

6    on direct appeal.  With respect to Claim IV, there was no reasoned decision, thus, with respect to

7    that Claim, the record will be independently reviewed to determine whether the state court was

8    objectively unreasonable in its application of clearly established federal law.[3]

9    ## V.  ANALYSIS OF PETITIONER'S CLAIMS

10   ### A.  Claim I

11   In Claim I, Petitioner argues that, "[t]he government failed to plead that counts 2, 3, and 4

12   had been brought within the applicable statutes of limitations" (Pet'r's Pet. at p. 18.) and that

13   "the applicable statute of limitations have long been considered an element of the offense [and

14   that] . . . [t]he Fourteenth Amendment's due process clause also requires the government to *plead*

15   as well as prove all of the elements of an offense." (Id. at p. 19 (emphasis in original).)  The

16   California Court of Appeal analyzed this Claim on direct appeal and stated the following:

17   > Defendant contends that [California Penal Code] section 800 was
18   > the only statute of limitations in effect at the time counts 2, 3 and 4
     > were allegedly committed and, because the people failed to plead
19   > that former section 803, subdivision (i) [FN 9] (hereinafter section
     > 803(i)) extended the statutes of limitations to 10 years, those
     > counts are time-barred.  We disagree.
20   > [FN 9]  Section 803, subdivision (h) (hereinafter section 803(h)),
     > effective on January 1, 2001, is the predecessor statute to section
21   > 801.1(b).  (Stats.2000, ch. 235, § 1.)  Subdivision (h) became
     > subdivision (i) in 2002.  (Stats.2001, ch. 235, § 1.)
22
     > Section 800 provides that "prosecution for an offense punishable
23   > by imprisonment in the state prison for eight years or more shall be
     > commenced within six years after commission of the offense."
24   > Section 801 provides that "prosecution for an offense punishable

25   ───────────────────

26   [3] Respondent initially argued in his answer that Claim IV was unexhausted.  However,
     Respondent withdrew that argument on September 24, 2010.

by imprisonment in the state prison shall be commenced within three years after commission of the offense."

On January 1, 2001, section 803(h)(2) became effective and provided a 10-year statute of limitations "for a felony offense described in subparagraph (A) of paragraph (2) of subdivision (a) of section 290, where the limitations period set forth in Section 800 has not expired as of January 1, 2001 . . . ."  One year later, subdivision (h)(2) of section 803 became subdivision (i)(2). Section 801.1(b), enacted in 2004, superseded section 803(i)(2) without significant modification.

As a preliminary matter, defendant conceded at trial that counts 2, 3 and 4 fell within the 10-year limitations period of section 801.1(b) [formerly section 803(i)] and withdrew his motion to dismiss as to those counts.  His doing so arguably constituted an affirmative waiver of the very claim he now raises on appeal. "Although . . . defendants may not forfeit the statute of limitations if it has expired as a matter of law, they may certainly lose the ability to litigate factual issues such as questions of tolling." (People v. Williams (1999) 21 Cal.4th 335, 344; see also People v. Padfield (1982) 136 Cal.App.3d 218, 226-227 [assertion of statute of limitations on appeal after plea of no contest to information not time-barred on its face constitutes waiver of right to litigate factual question whether offense was time-barred].)

In any event, defendant's claim fails on the merits.  Defendant was charged in count 2 with violating section 288.5, subdivision (a). According to section 800, the statute of limitations for section 288.5 is six years.  Given that count 2 was alleged to have occurred between January 2, 1995 and August 31, 1997, the earliest the statute of limitations could have expired for that offense was January 2, 2001.  (People v. Angel (1999) 70 Cal.App.4th 1141, 1145-1147.)  Thus, the statute of limitations on count 2 would not have expired before the 10-year statute provided in section 803(i)(2) took effect.  Extension of the unexpired six-year limitations period was therefore permissible.  (Stogner v. California (2003) 539 U.S. 607, 618 [156 L.Ed.2d 544, 556] (Stogner).)  The same goes for counts 3 and 4, both of which are subject to a three-year statute of limitations pursuant to section 801.  The earliest the limitations period could have expired in counts 3 and 4 was September 1, 2001 and January 2, 2001, respectively, well after the 10-year statute in section 803(i)(2) became effective.

Defendant argues the statute of limitations is an element of the offense and the government is therefore required specifically to allege the statutes in the charging document.  (People v. Bunn (1997) 53 Cal.App.4th 227, 233 (Bunn), overruled on other grounds by People v. Frazer (1999) 21 Cal.4th 737, 765, fn. 28; In re Demillo (1975) 14 Cal.3d 598, 601-602; People v. Zamora

9

1   (1976) 18 Cal.3d 538, 564, fn. 25 (Zamora); Cowan v. Superior
    Court (1996) 14 Cal.4th 367, 374.)  Defendant is wrong.  As those
2   cases make clear, the People "must plead and prove that the
    prosecution was commenced within the statutorily prescribed time
3   period."  (Bunn, supra 53 Cal.App.4th at p. 234; see also In re
    Demillo, supra, 14 Cal.3d at 601; Zamora, supra, 18 Cal.3d at p.
4   564, fn. 26.)  That pleading requirement means that, when filed,
    "[a]n accusatory pleading must allege facts showing that the
5   prosecution is not barred by the statute of limitations . . . ."
    (People v. Crosby (1962) 58 Cal.2d 713, 724.)  Here, the charging
6   document alleged the time periods within which the offenses
    occurred, and those periods comported with applicable statutes of
7   limitations.  The People were not required specifically to plead
    section 801.1(b) or its predecessor statute, section 803(i).

8

9   Elrite, 2008 WL 4152673, at *4-5.

10      There was no due process violation under these circumstances for the reasons discussed

11  by the California Court of Appeal.  Here, the criminal pleadings set forth time frames for the

12  purported crimes that fell within the relevant statute of limitations.  Thus, the accusatory

13  pleadings alleged facts showing that the prosecution of these claims was not barred by the statute

14  of limitations.  See People v. Crosby, 58 Cal.2d 713, 724, 25 Cal. Rptr. 847, 375 P.2d 839

15  (1962).

16      To establish that federal habeas relief is warranted, Petitioner must show that there was a

17  violation of the United States Constitution, federal laws, or treaties of the United States.  See 28

18  U.S.C. § 2254(a).  The only Supreme Court case that Petitioner cites to in his habeas petition in

19  support of this Claim is Apprendi v. New Jersey, 530 U.S. 466 (2000).  In Apprendi, the United

20  States Supreme Court held that as a matter of constitutional law, other than the fact of a prior

21  conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory

22  maximum must be submitted to the jury, and proved beyond a reasonable doubt."  Id. at 490.

23  The rule of Apprendi was not violated through Petitioner's argument in Claim I.  See, e.g.,

24  Renderos v. Ryan, 469 F.3d 788, 796-97 (9th Cir. 2006).  Furthermore, the prosecution alleged

25  time periods when the purported crimes occurred that were within the relevant statute of

26  limitations for Counts 2, 3 and 4.  The California Court of Appeal's decision was not an

10

1   objectively unreasonable application of clearly established Federal law.  Therefore, Petitioner is

2   not entitled to federal habeas relief on Claim I.

3       B.  Claim II

4       In Claim II, Petitioner alleges that "[s]ection 803(f) [of the California Penal Code] was

5   not available to revive the expired statutes of limitation for counts 1, 5, and 6."  (Pet'r's Pet. at p.

6   20.)  Petitioner relies on the fact that the complaining witness L. reported Petitioner's misconduct

7   first in 1997, which was subsequently withdrawn by L., and then again in 2004.  The California

8   Court of Appeal discussed the facts underlying this Claim in its decision on direct appeal:

9           Defendant next contends the trial court improperly applied section
            803(f) to counts 1, 5, and 6 based on the report made by the victims
10          in 2004 rather than the 1997 report.  Again, we disagree.
            Section 803(f) permits prosecution of specified sexual offenses
11          against children after the principal statute of limitations has expired
            if (1) prosecution is commenced within one year of the victim
12          reporting the abuse to law enforcement, (2) the offense involved
            substantial sexual conduct, and (3) there is independent evidence
13          that clearly and convincingly corroborates the victim's allegation.
            It is the first element with which defendant takes exception,
14          claiming that the first report by L. and D. in 1997 triggered section
            803(f) and counts 1, 5 and 6 are time-barred as a result of the
15          failure to commence prosecution within one year of that first
            report.
16
            No one disputes that the victims reported defendant's sexual abuse
17          to law enforcement in 1997.  However, D. and L. both testified that
            defendant not only persuaded them to recant that report, but
18          provided them with an alternate story to give instead.  Based on
            that testimony, the trial court found the 1997 report did not trigger
19          section 803(f), reasoning in part that defendant should not reap the
            benefit of having coaxed his victims into recanting by claiming the
20          one-year statute was activated despite that the victims recanted.
            We agree.
21
            Section 803(f) is wholly dependent upon allegations by the victim,
22          without which there would be no report to trigger the statute's
            limitation period.  Neither a report by someone other than the
23          victim, nor corroboration of the alleged crime by itself, is enough
            to activate section 803(f).  (See Ream v. Superior Court (1996) 48
24          Cal.App.4th 1812, 1818 [report by defendant's ex-wife and
            corroborating evidence insufficient to prompt section 803(f)].)
25          Defendant argues the purpose of the statute is to "give law
            enforcement a reasonable time to investigate and decide whether to
26          prosecute after having received a report of sexual misconduct that

11

they previously were unaware of."  Defendant cites to no authority
for the proposition which, if true, would require law enforcement
to spend valuable time and resources investigating allegations the
victim herself no longer supports and, as was the case here,
disputed with contradictory information.  In any event, the fact that
law enforcement received information about a possible crime in
1997 prior to the second report is of no consequence because the
1997 report was effectively withdrawn when the victims recanted.
Thus, the 2004 report was the "first" report of sexual abuse by L.
and D. for purposes of section 803(f).

Because we find no error in the court's application of section
803(f) based on the victims' 2004 report, we need not address
defendant's remaining contentions in that regard.

Elrite, 2008 WL 4152673, at *5-6.

With respect to Claim II, Petitioner cites to no clearly established Federal law that was

unreasonable applied by the California Court of Appeal in denying this Claim.  As the United

States Supreme Court has stated, "[i]n conducting habeas review, a federal court is limited to

deciding whether a conviction violated the Constitution, laws or treaties of the United States."

Estelle v. McGuire, 502 U.S. 62, 69 (1991).  In Claim II, Petitioner alleges that the California

Court of Appeal misapplied section 803(f) of the California Penal Code because the proper start

of the statute of limitations was 1997 not 2004.  This argument arises solely on the state courts'

interpretation of its own state law and the applicability of that statute to the circumstances of this

case.  Petitioner cites to no United States Supreme Court case which establishes that the use of

the 2004 report triggered the beginning of the relevant one-year statute of limitations where a

previous 1997 report was withdrawn by the victims.  Thus, Petitioner is not entitled to federal

habeas relief on this Claim.

C.  Claim III

In Claim III, Petitioner argues that Section 803(f) of the California Penal Code "was

unconstitutionally applied to allow petitioner's prosecution based on a successive report."

(Pet'r's Pet. at p. 22.)  Petitioner argues that the application of Section 803(f) violated the Ex

Post Facto Clause and that its application was so arbitrary as to violate his right to due process.

12

The California Court of Appeal analyzed this Claim on direct appeal and stated the following:

> Defendant argues that under <u>Stogner</u>, <u>supra</u>, 539 U.S. 607, the use of section 803(f) [FN 10] "to validate a prosecution based on a successive report" which would otherwise be time-barred violated the ex post facto and due process clauses of the United States Constitution.
>
> [FN 10]  Section 803(f) (formerly subd. (g)), as originally enacted, went into effect on January 1, 1994.  (Stats.1993, ch. 390, § 1, p. 2226.)
>
> In <u>Stogner</u>, the United States Supreme Court considered whether section 803, subdivision (g) violated the ex post facto clause. There, the defendant was charged with sex-related child abuse committed between 1955 and 1973.  Section 803 revived the charges, which had expired some 22 years before the prosecution was initiated.  (<u>Stogner</u>, <u>supra</u>, 539 U.S. at pp. 609-610.)  The United States Supreme Court held that section 803, subdivision (g), as applied to crimes that were already time-barred when the section was enacted on January 1, 1994, violates ex post facto principles.  (<u>Id.</u> at pp. 609, 611-621.)  <u>Stogner</u> also found, however, that the ex post facto clause does not prevent the state from extending time limits for future offenses of for prosecutions not yet time-barred.  (<u>Id.</u> at p. 632; <u>People v. Vasquez</u> (2004) 118 Cal.App.4th 501, 505.)
>
> Here, the Legislature could extend the limitations period for section 803(f) so long as the causes of action were not time-barred as of January 1, 1994, the effective date of the original statute.  The six-year statute of limitations on count 1 ran, at the earliest, on December 4, 1999, well after section 803(f) was enacted. Similarly, the three-year statute of limitations on counts 5 and 6 ran, at the earliest, on December 6, 1997, again well after the enactment of section 803(f).  Defendant's convictions under those counts do not run afoul of the ex post facto principles or due process.

<u>Elrite</u>, 2008 WL 4152673, at *6.

In his federal habeas petition, Petitioner relies on <u>Stogner v. California</u>, 539 U.S. 607 (2003) to support his ex post facto argument.  As noted by the United States Supreme Court:

> In 1993, California enacted a new criminal statute of limitations governing sex-related child abuse crimes.  The new statute permits prosecution for those crimes where "[t]he limitation period specified in [prior statute of limitations] has expired" – provided that (1) a victim has reported an allegation of abuse to the police, (2) "there is independent evidence that clearly and convincingly corroborates the victim's allegation," and (3) the prosecution is

1    begun within one year of the victim's report.

2    Id. at 609.  The Court explained that the statute authorized the prosecution for criminal acts

3    committed many years beforehand – "and where the original limitations period had expired - as

4    long as prosecution begins withn a year of a victim's first complaint to the police."  Id.  The

5    Court continued by holding that:

6              The Constitution's two Ex Post Facto Clauses prohibit the Federal
               Government and the States from enacting laws with certain
7              retroactive effects.  See Art. I, § 9, cl. 3 (Federal Government); Art.
               I, § 10, cl. 1 (States).  The law at issue here created a new criminal
8              limitations period that extends the time in which prosecution is
               allowed.  It authorized criminal prosecutions that the passage of
9              time had previously barred.  Moreover, it was enacted after prior
               limitations periods for Stogner's alleged offenses had expired.  Do
10             these features of the law, taken together, produce the kind of
               retroactivity that the Constitution forbids.  We conclude that they
11             do.

12   Id. at 610.  The Supreme Court expressly noted however that its holding it Stogner did not effect

13   extensions of unexpired statutes of limitation.  See id. at 618.

14           In Renderos, 469 F.3d 788, the Ninth Circuit upheld the constitutionality of the statute of

15   limitations provision at issue as related to an ex post facto argument.  In that case, the petitioner

16   argued that the applicable six-year statute of limitation had expired and the application of a one-

17   year reporting statute of limitations violated the Ex Post Facto Clause.  In relying on Stogner, the

18   Ninth Circuit determined that the statute went into effect in January 1994 - four years before

19   petitioner committed the 1998 offenses.  The State's extension of the six-year statute of

20   limitation was therefore permissible as it was an extension of time for a future offense (one not

21   yet committed) and for a prosecution that was not yet time barred (again because the crime had

22   not yet been committed).  See id. at 618-19 (citations omitted).  The Ninth Circuit noted that

23   Stogner was distinguishable because the critical element in that case was that "the amendment [to

24   the statute] in question became effective after the statute of limitations had already expired."  Id.

25   at 795.  It explained that the relevant amendment to the statute of limitations:

26           was enacted while the limitations periods were still running on the

14

claims against Renderos.  This is, therefore, precisely the type of statute that <u>Stogner</u> expressly stated it was *not* striking down.  <u>See id.</u> at 619, 123 S.Ct. 2446.  Renderos identifies no other case on point.  Therefore, we cannot conclude that the California Court of Appeal's determination was "contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States . . . ."  28 U.S.C. § 2254.

<u>Id.</u>

As the California Court of Appeal noted in this case, the applicable statute of limitations on Counts 1, 5 and 6 (or those counts that utilized the applicable § 803(f) provision) had not run at the time that section 803(f) was enacted.  The earliest that the statute of limitations ran on Count 1 was December 4, 1999.  The earliest that the statute of limitations ran on Counts 5 and 6 was December 6, 1997.  Thus, when § 803(f) was enacted, the statute of limitations had not run on the applicable counts to which it was applied.  Therefore, <u>Stogner</u> is not applicable under these circumstances and Petitioner fails to show that there was an ex post facto violation.

Petitioner also argues that the "application of section 803(f) was so arbitrary as to violate [his] right to due process of law."  (Pet'r's Pet. at p. 24.)  Once again, Petitioner cites to <u>Stogner</u> which noted that, "allowing legislatures to pick and chose when to act retroactively, risks both 'arbitrary and potentially vindictive legislation."  539 U.S. at 611.  As outlined above, this was not a retroactive application of the relevant statute of limitations provision as the statute of limitations of the crimes had not run at the time section 803(f)'s reporting provision was enacted.  Petitioner's due process argument does not warrant federal habeas relief.  He fails to show that the California Court of Appeals decision was an objectively unreasonable application of clearly established federal law.  The 1997 report was withdrawn by the victims.  Thus, Claim III should be denied.

D.  Claim IV

In Claim IV, Petitioner argues that his "[t]rial counsel was ineffective in not presenting evidence concerning the purchase date of the videocamera."  (Pet'r's Pet. at p. 25.)  Petitioner laid out the factual predicate underlying this Claim in his habeas petition:

34. The Law Offices of Robert J. Beles represented petitioner prior to the preliminary examination, which petitioner waived. Petitioner then retained trial counsel, attorney Robert Logan. While the Beles office was representing petitioner, petitioner showed counsel Beles a sales receipt for a camcorder that he said had been used to make the videos of himself and [D.] engaged in sexual activities. The sales receipt shows that the camcorder in question was a Sharp 160U purchased from Sears store no. 2338 by Jason Edward as a gift on April 30, 2002. There is nothing on either the sales receipt or the packaging suggesting that the camcorder was anything but a new camcorder sold at retail for the first time. Petitioner told Mr. Beles that he had not acquired the camcorder until after April 30, 2002 and that all of the videos he had made of [D.] were made after that date. When trial counsel took over petitioner's case, this office sent trial counsel a box of all the evidence that petitioner had provided, which included the sale receipt and packaging for the Sharp 160U camcorder.

35. When the Beles office reappeared on petitioner's appeal, the sales receipt and packaging for the Sharp 160U camcorder were still in the box of evidence. Petitioner told Mr. Beles that he had advised trial counsel that the sales receipt and packaging for the camcorder showed that it had been purchased on April 30, 2002, that petitioner had not acquired the camcorder until after April 30, 2002, and that petitioner had made all videos of [D.] engaging in sexual activities with this camcorder. Petitioner has also advised Mr. Beles that he asked trial counsel to present the receipt and packaging as evidence and call petitioner as a witness to testify that petitioner had not acquired the camcorder until after April 30, 2002, and that this was the camcorder he used to take all of the videos of [D.] at issue in this case. Petitioner advised Mr. Beles that trial counsel declined to present such evidence or call petitioner as a witness, and the record confirms this.

26. [sic] Independent inquiry by counsel revealed that the particular model of the camcorder was first commercially released for sale in February, 2001, and that the camcorder uses the same type of 8mm videotape as that involved in this case. Assuming that the videotapes of petitioner having sex with [D.] had been taken with this video camera, therefore, [D.] would have been either 17 years old if petitioner had obtained the camcorder when it was first commercially released for sale, (in which case he could have only been charged with unlawful sexual conduct with a 17 year old, a much less serious misdemeanor offense than what he was convicted of), or at least 18 years old if petitioner had acquired the camcorder on or after the date of the sales receipt (in which case petitioner would have not been guilty of any sort of unlawful sexual conduct because [D.] would have been a consenting adult.)

(Pet'r's Pet. at p. 14-15.)

The Sixth Amendment guarantees effective assistance of counsel.  In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating ineffective assistance of counsel.  First, the petitioner must show that considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  <u>See</u> <u>id.</u> at 688.  Petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  <u>See</u> <u>id.</u> at 690.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the range of professional competent assistance.  <u>See</u> <u>id.</u>

Second, a petitioner must affirmatively prove prejudice.  <u>See</u> <u>id.</u> at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id.</u> at 694.  A reasonable probability is "a probability sufficient to undermine the confidence in the outcome."  <u>Id.</u>  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  <u>Pizzuto v. Arave</u>, 280 F.3d 949, 955 (9th Cir. 2002) (citing <u>Strickland</u>, 466 U.S. at 597).

In this case, trial counsel was clearly aware of the purchase date of the Sharp camcorder as illustrated by Petitioner telling trial counsel about this evidence as well as Petitioner's habeas counsel providing trial counsel with the sales receipt.  Thus, this is not a case where trial counsel failed to investigate the matter.  He was informed about this possible evidence and decided not to use it.  A trial counsel's tactical decision deserves deference when counsel makes an informed decision based on strategic trial considerations and the decision appears reasonable under the circumstances.  <u>See</u> <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1456 (9th Cir. 1994).

However, under these circumstances, the record is incomplete to make a determination of whether counsel's performance fell below an objective standard of reasonableness.  As outlined

1   above, Petitioner stated in his habeas petition that he wanted to testify on his behalf so that the

2   sales receipt evidence could be admitted into evidence to support his theory that D. was not

3   underage when he had sex with her.  As the Ninth Circuit has stated, "it cannot be permissible

4   trial strategy, regardless of the merits or otherwise, for counsel to override the ultimate decision

5   of a defendant to testify contrary to his advice."  United States v. Mullins, 315 F.3d 449, 453 (9th

6   Cir. 2002).  Under these circumstances, it is more prudent to see whether this Claim can be

7   decided under the second prong of the Strickland test.  See Pizzuto, 280 F.3d at 955.

8          Assuming *arguendo* that Petitioner's trial counsel was ineffective for failing to introduce

9   the sales receipt of the camcorder into evidence and having Petitioner testify, Petitioner still

10  would not be entitled to federal habeas relief on this Claim as he failed to show to a reasonable

11  probability that the outcome of the proceeding would have been different.  The video was not the

12  only evidence to support the charges that Petitioner committed the charged sexual offenses

13  against D.  At trial, the evidence included testimony from D. as well as her sister L. that

14  Petitioner committed sex acts against D. when she was under 14, 14-15, and under 16.  L.

15  testified to sexual acts that she saw Petitioner engage in with D. at these various ages.  (See

16  Reporter's Tr. at p. 92, 94).  L. also testified after viewing one of the videotapes of the sexual

17  acts between Petitioner and D. that L. thought D. looked about "fourteen or fifteen" in the video.

18  (See id. at p. 104.)  D. testified to numerous sexual acts that the Petitioner performed on her at

19  the requisite varying age groups.  (See id. at p. 187, 191, 194, 213, 215.)  Thus, the evidence

20  supporting the crimes that Petitioner committed against D. and the ages that she was when the

21  crimes took place was confirmed by both the victim (D.) as well as her sister L.  Petitioner failed

22  to show to a reasonable probability that the outcome of the proceeding would have been different

23  had trial counsel sought to admit the purchase date of the Sharp videocamera.

24         Petitioner also argues that trial counsel was ineffective for failing to present evidence on

25  the sequence of tracks 1 and 3 of the DVD shown at trial.  During trial, the following stipulation

26  between the parties was told to the jury:

18

1

2

3

4

5

6

7

8

9

10

> The parties stipulate that the DVD, marked Exhibit 4, contains
> excerpts from much longer tapes and depict the first few minutes
> of much longer tapes.  Now, you will be shown these excerpts.
> The remainder of those longer tapes depict multiple acts of oral
> copulation, fondling of genitalia, and penetration of the vagina and
> anus of [D.].
>
> The longer tapes also depict the use of various dildos, a cock ring,
> a large white massager and various lubricants.
>
> Now, you see there are titles on the screen that is in front of you.
> Titles one and three in Exhibit 4, which is the DVD with the
> excerpts, depict the first few minutes of the tape found at Alondra
> Hicks's apartment.  Titles four and five depict excerpts from tapes
> found at the defendant's home.
>
> So, again, what you are about to see are excerpts from much longer
> tapes.

11  (Reporter's Tr. at p. 212-13.)  During trial, D. testified that in title one she approximated that she

12  was thirteen or fourteen and that in title three she was around sixteen.  (See id. at p. 214-15.)  In

13  his habeas petition, Petitioner argues that:

14

15

16

17

> Tracks 1 and 3 came from the opening minutes of the 8 mm
> camcorder tape found by Hicks. [D.] testified that track 1 was
> made when she was 13 or 14, and track three was made when she
> was 16.  If what [D.] was saying was true, it would mean that
> petitioner recorded track 1 when [D.] was 13 or 14, didn't use the
> camcorder tape for the next two years, and then videotaped [D.]
> when she was 16 using the same camcorder tape.

18  (Pet'r's Pet. at p. 15.)  As previously described, both [D.] and L. testified to numerous sex acts

19  that Petitioner committed on [D.] during the various relevant age ranges to support the

20  convictions.  Petitioner fails to show to a reasonable probability that the outcome of the

21  proceeding would have been different had trial counsel pursued this sequencing theory.

22  Evidence at trial supported the conviction included not on the videotape but direct testimonial

23  evidence from D. and L. regarding the sexual crimes Petitioner committed against D. at the

24  relevant ages of D.  Therefore, Petitioner is not entitled to federal habeas relief on Claim IV.

25  ## VI.   REQUEST FOR AN EVIDENTIARY HEARING

26  Finally, Petitioner requests an evidentiary hearing.  A court presented with a request for

1    an evidentiary hearing must first determine whether a factual basis exists in the record to support

2    petitioner's claims, and if not, whether an evidentiary hearing "might be appropriate." Baja v.

3    Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999); see also Earp v. Ornoski, 431 F.3d 1158, 1166

4    (9th Cir. 2005).  A petitioner requesting an evidentiary hearing must also demonstrate that he has

5    presented a "colorable claim for relief." Earp, 431 F.3d at 1167 (citations omitted).  To show

6    that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would

7    entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation

8    marks and citation omitted).  In this case, an evidentiary hearing is not warranted for the reasons

9    stated in supra Part V.  Petitioner failed to demonstrate that he has a colorable claim for federal

10   habeas relief.  Thus, his request will be denied.

11                                   VII.  CONCLUSION

12         Accordingly, IT IS HEREBY ORDERED that Petitioner's request for an evidentiary

13   hearing is DENIED.

14         For all of the foregoing reasons, IT IS RECOMMENDED that the petition for writ of

15   habeas corpus be DENIED.

16         These findings and recommendations are submitted to the United States District Judge

17   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

18   after being served with these findings and recommendations, any party may file written

19   objections with the court and serve a copy on all parties.  Such a document should be captioned

20   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

21   shall be served and filed within seven days after service of the objections.  The parties are

22   advised that failure to file objections within the specified time may waive the right to appeal the

23   District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he

24   elects to file, Petitioner may address whether a certificate of appealability should issue in the

25   event he elects to file an appeal from the judgment in this case. See Rule 11, Federal Rules

26   Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

                                         20

1 when it enters a final order adverse to the applicant).

2 DATED:  March 23, 2011

3

4                    _____

5                    TIMOTHY J BOMMER
                     UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26